## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

               Plaintiff,

v.

Dean Wade Guenther,

               Defendant.

Case No. 23-cr-340 (DSD/TNL)

**REPORT &
RECOMMENDATION**

---

Evan Gilead, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Aaron J. Morrison, Federal Public Defender, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

---

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Dean Wade Guenther's Motion to Suppress Evidence Obtained From Search Warrant Dated June 16, 2023, ECF No. 21, and Motion to Dismiss Count I, ECF No. 22. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable David S. Doty, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

A hearing was held on January 9, 2024. ECF No. 25. Assistant United States Attorney Evan Gilead appeared on behalf of the United States of America (the "Government"). Federal Defender Aaron J. Morrison appeared on behalf of Defendant Dean Wade Guenther ("Defendant"). At the hearing, the Government offered, and the

Court received Government Exhibit 1. *Id.* Government Exhibit 1 is the application in support of a search warrant for Defendant's person and residence and the issued search warrant dated June 16, 2023. *See* Gov't's Ex. 1. These motions are ripe for determination by the Court.

## II.  ANALYSIS

### A.  Motion to Suppress Evidence from the June 16, 2023 Search Warrant

Defendant challenges the search warrant issued for his person and residence, located at XXX Edmund Avenue West in St. Paul, Minnesota. ECF No. 21 at 1. *See also* Gov't's Ex. 1. Special Agent Dietman for the Minnesota Bureau of Criminal Apprehension applied for the warrant which was signed by a Ramsey County District Court judge on June 16, 2023. *See* Gov't's Ex. 1.

Defendant moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), "to address the veracity of the affidavit in this case." ECF No. 21 at 3. Defendant also moves to suppress evidence obtained from the execution of the June 16, 2023 search warrant for his person and his residence. *Id.* at 1. He seeks a "four concerns" review of the search warrant. *Id.* at 1-3. The Government opposes both requests. *See* Gov't's Resp. at 2-5, ECF No. 24.

### 1.  Request for *Franks* Hearing

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant "may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). The Court may grant a *Franks*

hearing only if the defendant satisfies the "substantial preliminary showing" requirement. First, the defendant must show "that police added or omitted facts with intent to make the affidavit misleading, or in reckless disregard[1] of whether the affidavit thereby becomes misleading." *United States v. Mathews*, No. 13-cr-79 (ADM/AJB), 2013 WL 5781566, at *7 (D. Minn. Oct. 25, 2013), *aff'd*, 784 F.3d 1232 (8th Cir. 2015). Second, the defendant must show that the affidavit no longer establishes probable cause if the false information is excised, or the omitted information is included. *Arnold*, 725 F.3d at 898.

Federal courts grant *Franks* hearings only in "very limited circumstances." *See United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir. 1995). The requirement of a substantial preliminary showing "is not lightly met." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (citation omitted). It requires more than allegations, and a defendant satisfies this standard only by making an offer of proof, through affidavits or other similarly reliable evidence. *Franks*, 438 U.S. at 171. Specifically,

> [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

---

[1] Recklessness may be "inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been 'clearly critical' to the finding of probable cause." *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (quoting *United States v. Reivich*, 793 F.2d 957, 961-62 (8th Cir. 1986)); *see also United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (stating that an officer acts recklessly by withholding information that any "reasonable person would have known that this was the kind of thing the judge would wish to know"). Recklessness may also be inferred, when after viewing all the evidence, it is clear that the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (citation omitted).

*Id.*; *see also Mathison*, 157 F.3d at 548 ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing.").

Defendant argues that the inclusion of information in the application for the June 16, 2023 warrant that was recommended to be suppressed in March 2023 (before the June 16, 2023 warrant was issued) in the case captioned *United States v. Derek John Paddy*, Case No. 22-cr-326(1) (KMM/LIB) because of a *Franks* violation, not only raises issues with the veracity of that information, but also the remaining information in the affidavit. *See* ECF No. 21 at 3. The information at issue in the application in support of the June 16, 2023 search warrant is one paragraph long and is derived from an electronic surveillance that occurred on September 30, 2022. *Id.* at 3. *See also* Gov't's Ex. 1 at App. Page 4-7. On September 30, 2022, Special Agent Dietman assisted the Paul Bunyan Drug Task Force with electronic surveillance of a targeted vehicle as it traveled between Bemidji, Minnesota and St. Paul, Minnesota, including Defendant's Edmund residence in St. Paul, Minnesota. Gov't's Ex. 1 at App. Page 4-7.

Defendant asserts that the information regarding the trip between Bemidji and St. Paul came from a warrant that was later found to be invalid because of a *Franks* violation. ECF No. 21 at 3. Defendant also states that the author of the invalid warrant is Special Agent Erickson. *Id.* He contends that Special Agent Dietman's decision to include information obtained from an invalid warrant constitutes a reckless disregard for the truth. *Id.* at 4. Defendant further argues that the inclusion of the above information raises concerns with the remaining information in the affidavit and requires this Court to hold a

*Franks* hearing "to ensure additional paragraphs in the affidavit are not also tainted by misrepresentations or omissions." *Id.*

In response, the Government claims that Defendant's motion contains incorrect information. *See* Gov't's Resp. at 4. The warrant from the other case was not invalidated in March 2023. *Id.* It was not until August 21, 2023, that the Court recommended the warrant to be suppressed. *Id.* In support, the Government cites to ECF No. 132 in the case captioned *United States v. Derek John Paddy*, Case No. 22-cr-326(1) (KMM/LIB). *Id.* The Government, therefore, argues that the recommended suppression of that warrant occurred two months after the June 16, 2023 warrant in this case was issued, not before. *Id.* at 4-5. In other words, Special Agent Dietman (who is the affiant of the June 16, 2023 warrant) could not have been deliberate or reckless with the facts obtained in the warrant in this case because the recommendation to suppress the warrant in the other case did not exist yet. *Id.* The Government also clarifies that Special Agent Dietman was not the affiant of the invalidated warrant from the other case. *Id.* Special Agent Erickson was the affiant of the invalidated warrant. The Government argues that Defendant has not met the stringent requirements for a *Franks* hearing and asks the Court to deny Defendant's request and only to conduct a "four corners" review of the June 16, 2023 warrant. *Id.* at 5.

The Court finds that a *Franks* hearing is not warranted in this case. As an initial matter, Defendant did not offer any evidence in the form of an affidavit to corroborate his assertion that Special Agent Dietman added facts with the intent to make the affidavit misleading or recklessly disregarded the facts in the affidavit. Defendant provided mere allegations. And mere allegations, "standing alone, without an offer of proof in the form of

a sworn affidavit of a witness or some other reliable corroboration, [are] insufficient to make the difficult preliminary showing" that the affiant made false statements knowingly and intentionally or with reckless disregard for the truth. *See Mathison*, 157 F.3d at 548; *see also Franks*, 438 U.S. at 155-56; *United States v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997). The only corroboration Defendant attempts to provide is the erroneous statement that Special Agent Dietman put information in the application for the June 16, 2023 warrant that he took from a search warrant that was suppressed in March 2023. The record in *United States v. Derek John Paddy* shows, however, that the suppression recommendation was issued *after* the June 16, 2023 warrant was issued. A *Franks* hearing is not required when, such as here, "no proof is offered that an affiant deliberately lied or recklessly disregarded the truth." *See Mathison*, 157 F.3d at 548 (citations omitted).

Moreover, *Franks* only "protects against [statements or] omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*" the reviewing judge. *See United States v. Pickens*, No. 19-cr-314 (ADM/BRT), 2020 WL 7685457, at *3 (D. Minn. Oct. 21, 2020), *report and recommendation adopted*, 2020 WL 7587075 (D. Minn. Dec. 22, 2020). Though Defendant "identified what he said were specific falsehoods [or omissions] in the affidavit[s], he offered no proof that the[y] were deliberate or reckless." *See Mathison*, 157 F.3d at 548. There is nothing in the record indicating Special Agent Dietman intended to mislead the reviewing judge or recklessly disregarded whether he would mislead the reviewing judge. Because Defendant has not shown that Special Agent Dietman's statements or omissions were designed to mislead or were made in reckless disregard of whether they would mislead, Defendant has not met his

burden to warrant a *Franks* hearing. The Court recommends denying Defendant's request for a *Franks* hearing.

### 2. Four Corners Review

With respect to the four corners review of the application in support of the June 16, 2023 search warrant, Defendant argues that the warrant was not supported by probable cause for two reasons. *See* ECF No. 21. First, the information provided to law enforcement by the cooperating individuals was not corroborated and second, information supporting the warrant was stale because over six months passed between the time the cooperating individuals provided information to law enforcement and the issuance of the search warrant on June 16, 2023. *Id.* at 1-3.

"The Fourth Amendment requires that search warrants be supported by probable cause." *United States v. Tripp*, 370 Fed. App'x 753, 757 (8th Cir. 2010). "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (quotation omitted); *accord Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."); *see also United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) ("there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue.").

The sufficiency of the affidavit is evaluated using a totality-of-the-circumstances approach. *United States v. Augustine*, 663 F.3d 367, 372 (8th Cir. 2011). "When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning." *United States v. Willis*, No. 11-cr-13 (DSD/JJK), 2011 WL 1100127, at *1 (D. Minn. Mar. 14, 2011), *report and recommendation adopted*, 2011 WL 1060981 (D. Minn. Mar. 23, 2011). "Probable cause requires only a showing of fair probability, not hard certainties." *Hudspeth*, 525 F.3d at 676 (citing *Gates*, 426 U.S. at 213).

> When the issuing judge relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause. The affidavit should be examined under a common sense approach and not in a hypertechnical fashion. When the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge is relevant to whether the affidavit provided probable cause to support the search.

*United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quotations and citations omitted). "Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference." *Willis*, 2011 WL 1100127, at *2.

The following is a summary of the relevant portions of the application accompanying the search warrant. Law enforcement conducted a methamphetamine and fentanyl distribution investigation. Gov't Ex. 1 at App. Page 3-7. Through this investigation, law enforcement identified Defendant as the source and his Edmund Avenue

West residence in St. Paul, Minnesota as the location where methamphetamine and fentanyl were being distributed. *Id.* Law enforcement interviewed four cooperating individuals[2] beginning in September 2022 until May 2023. *See generally* Gov't Ex. 1.

On September 27, 2022, law enforcement interviewed the first cooperating individual regarding her purchases of fentanyl with the distinct colors pink and rainbow. *Id.* at App. Page 3-7. The first cooperating individual identified Defendant as the source of the fentanyl and identified his Edmund residence in St. Paul as the location where transactions for fentanyl occur. *Id.* The first cooperating individual explained that Defendant sells fentanyl in several colors, including pink, yellow, orange, and red and she herself has purchased fentanyl from Defendant on several occasions. *Id.* Law enforcement interviewed the first cooperating individual again on October 4, 2022. *Id.* This time, she told law enforcement that she would enter Defendant's residence through the back door of his residence and walk up the back stairs of the residence to Defendant's kitchen area which is where the narcotics transactions occur. *Id.* at App. Pages 3-7 through 4-7.

On October 3, 2022, law enforcement interviewed a second cooperating individual who provided that she went to a St. Paul residence that was red in color and observed two of her associates go into the residence and come back out with fentanyl. *Id.* App. Page 4-7. The second cooperating individual believed narcotics were sold at that residence. *Id.*

On November 21, 2022, law enforcement interviewed a third cooperating individual. *Id.* This individual identified Defendant as the person who sells fentanyl in

---

[2] The identity of the four cooperative individuals is not provided in the application in support of the search warrant; therefore, for simplicity purposes this Report and Recommendation refers to each of the four cooperating individuals with the pronouns she/her regardless of their gender identity.

multiple colors as well as methamphetamine. *Id.* The third cooperating individual identified Defendant's Edmund residence in St. Paul. *Id.* at App. Page 5-7. Like the second cooperating individual, the third cooperating individual identified Defendant's Edmund residence as red in color. *Id.* And like the first cooperating individual, she explained that she would enter Defendant's Edmund residence through the back entrance to purchase fentanyl in the kitchen area of his residence. *Id.* at App. Pages 4-7 through 5-7.

On May 23, 2023, law enforcement interviewed a fourth cooperating individual (later referred to as a confidential informant in the application) who told law enforcement similar information as the first and third cooperating individuals, *id.* at App. Page 5-7, that is, she purchased fentanyl and methamphetamine from Defendant in the kitchen of Defendant's Edmund residence in St. Paul. *Id.* She further informed law enforcement that she would access Defendant's residence through the back door which led her directly to Defendant's kitchen. *Id.*

Later, the fourth cooperating individual (referred to in this portion of the application as a confidential informant) assisted law enforcement with a controlled purchase of methamphetamine and fentanyl from Defendant at his Edmund residence. *Id.* Defendant contacted the confidential informant via a phone call through Facebook Messenger to conduct the sale. *Id.* Law enforcement corroborated the phone number for Defendant prior to the controlled purchase. *Id.*

Lastly, the application discloses that the confidential informant has a criminal history which includes multiple theft convictions, first degree burglary, and providing law enforcement with a false name/date of birth. *Id.* at App. page 6-7. The application states

10

that law enforcement independently corroborated information provided by this confidential informant which she has given to law enforcement against her penal interest. *Id.*

### a. Credibility and Reliability of Informants' Information

When informants are used to develop probable cause to support a search warrant, "[t]he core question . . . is whether the information is reliable. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citing *Draper v. United States*, 358 U.S. 307, 313 (1959)). "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Williams*, 10 F.3d at 593 (citing *Gates*, 462 U.S. at 233-34). Federal courts have found informants' information credible and reliable in situations where the information is based on their first-hand observations or provided the information to law enforcement against their penal interest, implicates them, or the information is corroborated by another informant or by investigating officers. *See United States v. Mims*, 567 F. Supp. 2d 1059, 1068 (D. Minn. 2008). *See e.g.*, *Solomon*, 432 F.3d at 827-29 (finding sufficient probable cause when an informant personally discovered evidence of a crime and gave law enforcement detailed descriptions).

Defendant's argument that the affidavit lacks probable cause because it fails to corroborate the information provided by the cooperating individuals and lacks information

to determine the credibility and reliability of the cooperating individuals is not supported by the record. The application sets forth that the first cooperating individual had been inside Defendant's Edmund residence to purchase colored fentanyl from Defendant on several occasions. *See* Gov't's Ex. 1 at App. Page 3-7. The first cooperating individual would enter Defendant's residence through the back door and participate in narcotic transactions in Defendant's kitchen. *Id.* at App. Page 3-7 through 4-7. This detailed information provided by the first cooperating individual was based on her first-hand observations and was corroborated by the third and fourth cooperating individuals.

The third cooperating individual also purchased colored fentanyl from Defendant at his Edmund residence. *Id.* at App. Page 4-7. These transactions would also occur in Defendant's kitchen which the third cooperating individual would access through the back entrance to Defendant's residence. *Id.* at App. Page 5-7. Likewise, the fourth cooperating individual also provided that she too purchased fentanyl from Defendant at his Edmund residence. *Id.* These transactions would also take place in Defendant's kitchen which could be accessed through the back entrance of Defendant's residence. *Id.* All of this information is consistent with the information provided by the first cooperating individual. Thus, this information has been corroborated. *See also United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (finding probable cause exists where "the information given by the first informant was corroborated with specific, consistent details provided by the second informant").

The second cooperating individual, although the least descriptive, also provided information consistent with the information provided by the third cooperating individual,

which is sufficient. *See also United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) ("[T]he corroboration of minor, innocent details can suffice to establish probable cause." (citation omitted)). For example, the second cooperating individual identified Defendant's residence as red in color, and the third cooperating individual also identified Defendant's Edmund residence as red in color. *See* Gov't's Ex. 1 at App. Pages 4-7 through 5-7. Further, the second cooperating individual identified the location of the red house to be in St. Paul, Minnesota and, likewise, the remaining cooperating individuals also identified Defendant's Edmund residence as located in St. Paul. *Id.* at App. Pages 3-7 through 5-7.

Law enforcement also corroborated the information provided by the cooperating individuals when the confidential informant took part in a controlled purchase of methamphetamine and fentanyl from Defendant at his Edmund residence. *Id.* at App. Page 5-7. The Defendant points out for the Court that this confidential informant has a criminal history, including providing a false name to law enforcement. *See* ECF No. 21 at 2. Law enforcement, however, corroborated the information provided by the confidential informant and she offered this information against her penal interest. *See* Gov't's Ex. 1 at App. Pages 5-7 through 6-7. Thus, even if the confidential informant lacks a track record, the information provided by the confidential informant is still reliable because law enforcement corroborated the information. *See Reivich*, 793 F.2d at 959 (finding that "[t]he Supreme Court in part specifically adopted the flexible 'totality of the circumstances' test for probable cause so that, for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability" (quoting *Gates*, 462 U.S. at 233-35)); *United States v. Brown*, 49

13

F.3d 1346, 1349 (8th Cir. 1995) ("[W]here a previously unknown informant provides information, the informant's lack of track record requires 'some independent verification' to establish the reliability of the information.").

Based on the cooperating individuals' first-hand observations and statements made against their penal interest, and corroboration of the first cooperating individual's information by the remaining cooperating individuals as well as law enforcement's own corroboration through their controlled purchase, the Court finds that the credibility and reliability of the cooperating individuals was established. *See Mims*, 567 F. Supp. 2d at 1069 (finding robust personal observations of cooperating defendants tending to increase the reliability of the information). Further, when information provided by informants is "reciprocally corroborative" then the information provided is enough to support a probable cause finding. *See Fulgham*, 143 F.3d at 401. Therefore, the Court also finds the information provided by the first cooperating individual was corroborated with "specific, consistent details provided by" the remaining cooperating individuals. *Id.*

### b.  Staleness

Defendant also argues that the information in the application was stale when the warrant was issued because over six months passed between the receipt of the information provided by the cooperating individuals and the issuance of the search warrant. *See* ECF No. 21 at 2-3. "Probable cause must exist when a warrant is issued, not merely at some earlier time." *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996). "There is no bright-line test for determining when information is stale. Whether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular

14

circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir.1993) (citation omitted). "[T]he lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *United States v. Horn*, 187 F.3d 781, 786 (8th Cir.1999). "[W]here recent information corroborates otherwise stale information, probable cause may be found." *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990) (citation omitted).

In this case, the criminal activity (sale of controlled substances) was continuing in nature and corroborated by a controlled purchase of methamphetamine and fentanyl. Law enforcement began interviewing cooperating individuals regarding their purchase of controlled substances from Defendant starting in the fall of 2022. *See generally* Gov't's Ex. 1. The most recent information was provided by the fourth cooperating individual on May 23, 2023. *Id.* at App. Page 5-7. This fourth cooperating individual took part in a controlled purchase of narcotics from Defendant shortly after her May 2023 interview with law enforcement and shortly before the June 16, 2023 warrant was issued. *Id.* This suggests that the criminal activity was ongoing up to the date the search warrant was issued on June 16, 2023. In other words, the controlled purchase corroborated the continuing nature of the criminal activity and confirmed that such activity was still occurring within days of the warrant being issued. The Court finds that the information provided by the cooperating individuals was not stale.

In sum, the Court finds that the June 16, 2023 search warrant was supported by probable cause and recommends denying Defendant's motion to suppress.

### B. Motion to Dismiss Count One of the Indictment

Defendant moves to dismiss Count One of the Indictment. *See* ECF No. 22. Count One of the Indictment charges Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). *See* ECF No. 1 at 1-2. Defendant asks the Court to dismiss Count One of the Indictment because the statute Defendant is charged with violating, 18 U.S.C. §§ 922(g)(1), violates his rights under the Second Amendment of the United States Constitution. ECF No. 22 at 1. Defendant specifically argues that § 922(g)(1) is unconstitutional on its face and as applied to him in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *Id.* Defendant acknowledges that his constitutional challenge to § 922(g)(1) is foreclosed by binding Eighth Circuit precedent. *Id.* Defendant brought this motion to preserve the issue for later review. *Id.* The Government opposes this motion. Gov't's Resp. at 5-6.

Defendant is correct that this issue is foreclosed by binding precedent. The Eighth Circuit in *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), ruled that § 922(g)(1) is constitutional even after the Supreme Court's decision in *Bruen*. In *Jackson*, the defendant was charged with being a felon in possession of a firearm in violation of § 922(g)(1). *Id.* at 498. Previously, the defendant "had sustained two convictions in Minnesota for sale of a controlled substance in the second degree." *Id.* The defendant moved to dismiss the indictment arguing that § 922(g)(1) is unconstitutional on its face and as applied to him.

*Id.* at 499. The district court denied the defendant's motion, and the defendant appealed to the Eighth Circuit. *Id.* at 501. The Eighth Circuit affirmed the district court's decision. *Id.* at 501.

In coming to its holding, the Eighth Circuit first turned to the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which recognized that an individual right to keep and bear arms should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Jackson*, 69 F.4th at 501 (quoting *Heller*, 554 U.S. at 626). Turning next to *Bruen*, the Eighth Circuit explained that *Bruen* similarly found that the right to keep and bear arms "is 'subject to certain reasonable, well-defined restrictions'" that "do not disturb or cast doubt on the prohibitions." *Id.* at 502 (quoting *Bruen*, 142 S. Ct. at 2156-57). From there the Eighth Circuit held that "[g]iven these assurances by the Supreme Court, and the history that supports them, [the court] conclude[s] that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Jackson*, 69 F.4th at 502.

Moreover, after parsing through the historical prohibitions on the right to possess a firearm, the Eighth Circuit in *Jackson* held that "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." *Id.* at 505. Further holding that "[c]onsistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, [the court] conclude[s] that the statute is constitutional as applied to [the defendant]." *Id.* at 505-506.

With respect to the as-applied challenge in this case, Defendant is charged with being a felon in possession of a firearm in violation of § 922(g)(1). ECF No. 1 at 1-2. The Indictment alleges that Defendant, having been convicted of kidnapping and for being a felon in possession of a firearm, both of which are crimes punishable by imprisonment for a term exceeding one year, knowingly possessed, "(1) a FNX 9mm semiautomatic pistol bearing serial number FX1U056277, and (2) a FMK 9mm semiautomatic pistol bearing serial number SBD2721" in affecting interstate commerce. *Id.* In *Jackson*, the Eighth Circuit found that § 922(g)(1) may be applied constitutionally to individuals with non-violent criminal records. 69 F.4th at 501-502. Thus, it follows, that § 922(g)(1) can be applied constitutionally to Defendant. Applying the reasoning outlined in *Jackson*, § 922(g)(1) is constitutional as applied to Defendant.

As to Defendant's facial challenge, the Court rejects Defendant's argument that § 922(g)(1) is facially unconstitutional. Following *Jackson*, the Eighth Circuit clarified in *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023), that *Jackson* was in the context of the defendant's as-applied challenge, but nonetheless, the Eighth Circuit held in *Cunningham* that "[t]he longstanding prohibition on possession of firearms by felons is constitutional." Thus, in *Cunningham*, the Eighth Circuit concluded that the prohibition on possession of firearms by felons is constitutional. The Eighth Circuit reaffirmed the constitutionality of § 922(g)(1) in *United States v. Dunn*, 76 F.4th 1062, 1068 (8th Cir. 2023). "[T]his court concluded that the felon-in-possession statute is constitutional." *Id.*

The Court is bound to apply the precedent of the Eighth Circuit. *See Hood v. United States* 342 F.3d 861, 864 (8th Cir. 2003) (finding district court sitting in the Eighth Circuit

was bound to apply the precedent of the Eighth Circuit). This is well-established law. *See Calzone v. Summers*, 942 F.3d 415, 426 n.8 (8th Cir. 2019) ("In the absence of a controlling Supreme Court decision to the contrary, the district court as well as any panel of this court, was bound to apply this circuit's precedent."); *United States v. Wright*, 22 F.3d 787, 788 (8th Cir. 1994) ("[A] panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc."). It is settled that the Court is bound by the decisions in *Jackson*, *Cunningham*, and *Dunn*, and the Court must apply the precedent from those decisions. As determined by the Eighth Circuit, § 922(g)(1) is facially constitutional. The Court recommends denying Defendant's request to dismiss Count One.

## IV. RECOMMENDATION

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained From Search Warrant Dated June 16, 2023, ECF No. 21, be **DENIED**.

2. Defendant's Motion to Dismiss Count I, ECF No. 22, be **DENIED**.

Date: February 8, 2024                    *s/ Tony N. Leung*
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota

                                          *United States v. Guenther*
                                          Case No. 23-cr-340 (DSD/TNL)

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.